**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALICIA BECKETT-CRABTREE,
as special administrator for the estate
of Brett Crabtree, deceased,

Plaintiff-Appellant,

v.

ROBERT HAIR, individually and in
his official capacity; WASHINGTON
COUNTY BOARD OF COUNTY
COMMISSIONERS,

Defendants-Appellees.

No. 07-5181
(D.C. No. 4:06-CV-00683-CVE-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

Alicia Beckett-Crabtree filed a civil rights action under 42 U.S.C. § 1983

against deputy sheriff Robert Hair and the Washington County Board of County

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Commissioners (Board) arising from the shooting death of her husband Brett Crabtree. The district court granted summary judgment in favor of Deputy Hair on the basis of qualified immunity and dismissed the claims against the Board.[1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

While patrolling a highway in Washington County, Oklahoma during a night in 2005, Deputy Hair noticed a truck stopped on the shoulder of the highway. Believing that the driver might need assistance, he pulled over and turned on his emergency lights. He noticed that the vehicle did not have a license plate and the driver's side door was ajar. After notifying the dispatcher as to his location, but before he could get out of his car, Mr. Crabtree started to get out of the truck. Deputy Hair told him to remain in the vehicle. When he reached the truck, Deputy Hair asked about the missing plate. According to Deputy Hair, Mr. Crabtree was "behaving in a manner that I interpreted as possibly [being] either . . . extremely stressed or under the influence[.]" Aplt. App. at 98. When he peered inside the truck he saw a syringe on the console and an open knife on the passenger seat.

Next, Deputy Hair asked Mr. Crabtree to get out of the truck. He complied, but without being asked, put his hands on the truck and assumed a position for a pat-down search. Deputy Hair asked him to step away from the truck and raise

_____

[1] The district court dismissed without prejudice plaintiff's state law claim against the Board.

-2-

his hands for the pat-down, during which he found him "extremely tense," *id*. at 100, and "giving . . . signs that he may flee or fight." *Id*. at 101. His "assumption at this point [was] that [Mr. Crabtree was] under the influence of methamphetamine." *Id*. Deputy Hair "immediately told him . . . 'I'm placing you in handcuffs.' I told him to turn around and place his . . . hands behind his back and – and he took off, took off," *id*. at 102, jumping a fence and running into a field. Deputy Hair gave pursuit, yelling at him to stop – "I can't remember what path we took. The area was lots of weeds, kind of field woods. It was dark, a little bit of fog." *Id*. at 106.

At some point, Mr. Crabtree stopped running and assumed a fighting stance. Deputy Hair drew his Taser and ordered him several times to get on the ground – instead, he took off running again, and an effort to stop him with the Taser failed. Deputy Hair renewed the pursuit and eventually found Mr. Crabtree crouched behind some weeds – "He st[ood] up immediately and I started . . . to walk around, telling him to get on the ground[.]" *Id*. at 107. When he refused the command, Deputy Hair drew his baton and tried to hit him in the thigh. The two men scuffled and Deputy Hair dropped the baton when Mr. Crabtree wrestled him to the ground. While Mr. Crabtree was on top of him, he grabbed at the flashlight in Deputy Hair's left hand. A few seconds later, Deputy Hair "fe[lt] his hand around my gun." *Id*. at 109. He rolled on his right side to prevent Mr. Crabtree from getting the gun out of its holster. In the meantime, Mr. Crabtree wrested

-3-

away Deputy Hair's flashlight and struck him on the back of the head. He was dazed and believed Mr. Crabtree would try to kill him – "I remember I was trying to see and all I could see was . . . starbursts. I couldn't see. It was just like I was groggy. . . . [I]t was taking me a long time . . . to get my vision back[.]" *Id*. at 116. "I was almost unconscious and I . . . didn't know how bad I was hurt. I thought he was going to kill me [with the flashlight]. I thought if I didn't act or if I lost consciousness . . . I was going to be dead." *Id*. at 117.

While he was still on the ground, Deputy Hair drew his gun and began firing – one shot hit Mr. Crabtree in the right elbow and the fatal shot hit him in the left side of the head. He remembers firing three shots, but in fact, four shots were fired.[2] And although he could not say with certainty how far away Mr. Crabtree was when he began shooting, he claims that a "muzzle flash," *id*. at 118, between the first and second shots provided sufficient illumination to allow him to catch a "fleeting glimpse of a waist and a shirt or something that looked like that in front of [him]." *Id*. The physician who later treated Deputy Hair, diagnosed him with scalp and face contusions, an eight-centimeter scalp laceration, and a concussion without loss of consciousness. He opined the blow to the head would have "dazed," *id*. at 149, and "temporarily incapacitated" him. *Id*. at 152.

---

[2]      Four shots fired in rapid succession can be heard on audiotape – however, only three, closely-grouped shell casings were recovered at the scene.

As to the distance between Mr. Crabtree and Deputy Hair when he fired the fourth and fatal shot, plaintiff's ballistics expert explained that

> [t]he re-enactment of the position of [Deputy Hair] and firearm . . . would have resulted in the ejected fired cartridge cases traveling downward onto the ground immediately in front of the officer, and subsequently three fired cartridge cases are found very close together. It is my opinion that [Mr. Crabtree's] head was at or near the ground when shot[.] . . . However, the position of the body as noted at the scene is such that the gunshot entry hole would be very difficult if not impossible to hit from the position of [Deputy] Hair on the ground near the three cartridge cases, and the track of the bullet through Mr. Crabtree's brain would also be all but impossible to attain given the stated position of [Deputy] Hair. There is a fourth shot which is heard on the audiotape of the police unit, and the fired cartridge case from this shot has not been located[.] This fact infers the possibility that [Deputy] Hair . . . [had] moved to another position [when the fatal shot was fired].

*Id.* at 485-86. On the basis of the ballistics report, plaintiff's law enforcement expert theorized that "at the time [Deputy] Hair discharged his firearm, [Mr.] Crabtree had ceased his aggression, was not posing any further threat . . ., had distanced himself . . . and was possibly in the process of attempting to escape," *id.* at 498, and the use of deadly force was unreasonable.

"We review a grant of summary judgment on the basis of qualified immunity *de novo.*" *Jiron v. City of Lakewood*, 392 F.3d 410, 413-14 (10th Cir. 2004). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. "We construe the record in the light most favorable to the non-moving party." *Jiron*, 392 F.3d at 414. However,

-5-

the mere existence of a factual dispute, which is neither genuine nor material, "does not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007). "Once a defendant invokes the defense of qualified immunity, the plaintiff must meet a two-part burden to avoid summary judgment." *York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008). The plaintiff must prove that the defendant violated a constitutional or statutory right that was clearly established at the time of the defendant's unlawful conduct. *Id.* "In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Scott*, 127 S. Ct. at 1774 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If there is no constitutional violation, the inquiry ends. *York*, 523 F.3d at 1209.

Plaintiff claims that Officer Hair's use of deadly force violated her husband's Fourth Amendment rights. We disagree. "We treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). A plaintiff can prove a constitutional violation by demonstrating that the amount of force used was objectively unreasonable. *Id.* "We assess objective reasonableness based on whether the totality of the circumstances justified the use of force." *Id.* at 1260 (quotation marks omitted).

-6-

The amount of force used is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id.* at 1259 (quotation marks omitted), taking into account that "police officers are often forced to make split-second judgments [about the amount of force necessary] – in circumstances that are tense, uncertain, and rapidly evolving." *Saucier*, 533 U.S. at 205 (quotation mark omitted). "Furthermore, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable." *Jiron*, 392 F.3d at 414.

"[D]eadly force is justified under the Fourth Amendment if a reasonable officer in [Deputy Hair's] position would have had probable cause to believe that there was a threat of serious harm to [himself]." *Id.* at 415 (quotation marks omitted). In the same vein, "[a]n officer's use of deadly force in self defense is not constitutionally unreasonable." *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 704 (10th Cir. 1995). "In assessing the degree of threat facing officers . . . we consider a number of non-exclusive factors . . . includ[ing] . . . the suspect's compliance with police commands[,] . . . whether any hostile motions were made with [a] weapon[,] . . . the distance separating the officers and the suspect[,] . . . and the manifest intentions of the suspect." *Estate of Larsen*, 511 F.3d at 1260.

Under the foregoing factors, it was not unreasonable for Deputy Hair to use deadly force. During the foot chase, Mr. Crabtree failed to heed verbal

commands. When a baton strike failed to subdue Mr. Crabtree, he wrestled Deputy Hair to the ground and tried to take his gun. Finally, Mr. Crabtree grabbed the flashlight and delivered a forceful blow that nearly rendered Deputy Hair unconscious. As to the distance between Mr. Crabtree and Deputy Hair when the fatal shot was fired, the district court viewed the evidence in the light most favorable to the plaintiff and assumed it was twenty-one feet. Distance alone, however, does not create a genuine issue of material fact that precludes summary judgment. Instead, "[i]n assessing objective reasonableness, we employ no bright line rules, and in a totality of the circumstances analysis, distance is but one factor of many. Our cases decline to adopt a *per se* rule where distance alone would create a fact question as a matter of law." *Id.* at 1262.

We agree with the district court that under the totality of the circumstances, the undisputed facts establish that Deputy Hair's use of deadly force was objectively reasonable. As the court explained:

> [I]t was [Mr.] Crabtree that inflicted an injury that caused [Deputy] Hair to suffer vision loss and become disoriented. [He] believed that [Mr.] Crabtree still had possession of the flashlight and plaintiff's expert states that [Mr.] Crabtree was about six feet away . . . at the time [Deputy] Hair fired his gun. This could cause a reasonable police officer to fear for his life, especially considering [Mr.] Crabtree's erratic behavior and [Deputy] Hair's observation that [he] was under the influence of an illegal substance. Even assuming that [Mr.] Crabtree ended up about 21 feet from [Deputy] Hair . . ., at the time [he] fired his gun he had a reasonable belief that he needed to use deadly force in self defense.

Aplt. App. at 567.

The district court addressed and correctly resolved the other issues plaintiff again raises on appeal. First, she asserts that factual similarities between this incident and the shooting in *Carr v. Castle*, 337 F.3d 1221 (10th Cir. 2003), require the denial of summary judgment. For the reasons explained by the district court, *Carr* is distinguishable, primarily because the plaintiff in that case produced evidence on summary judgment that the victim "was shot [in the back] when he no longer presented a threat of harm to police. . . . [He] no longer had the [weapon] at the time he was shot and that he was trying to flee." Aplt. App. at 565. There is no such evidence here.

Second, relying on unspecified policies and procedures, plaintiff asserts that Deputy Hair's decision to initiate a foot pursuit without waiting for help recklessly created the need to use deadly force. Admittedly, "[t]he reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Jiron*, 392 F.3d at 415 (quotation marks omitted). However, even if Deputy Hair made an error in judgment in deciding to pursue Mr. Crabtree, this is nothing more than negligence, which is not actionable under § 1983. *Sevier v. City of Lawrence*, 60 F.3d 695, 699 n.7 (10th Cir. 1995).

Next, plaintiff argues that questions of reasonableness must always be determined by the finder of fact, citing *Street v. Parham*, 929 F.2d 537 (10th Cir.

1991). *Street* concerned whether the district court erred in allowing the jury to consider the defendants' qualified immunity defense after the jury had found that one defendant had used excessive force. *Id*. at 538. "[W]e h[e]ld that it was error for the jury to be further instructed regarding a qualified immunity defense after it found that the force used was in fact reasonable." *Id*.

Fourth, plaintiff claims that the district court impermissibly weighed the evidence and made credibility determinations that favored Deputy Hair. More particularly, she argues that the court improperly credited Deputy Hair's

> after the fact <u>subjective</u> belief that he was in fear of his life and fired his gun in self-defense, which, of course, is making a credibility determination as to [his] subjective beliefs. The trial court did not consider that Deputy Hair, after getting hit in the head with his flashlight, shot [Mr.] Crabtree in retaliation and not because he was in danger of death or serious bodily injury.

Aplt. Op. Br. at 34 (quotation marks omitted). To the contrary, the court "considered this argument, but determined that it was not a reasonable inference based on the evidence presented by plaintiff." Aplt. App. at 636. More to the point, "speculation and conjecture . . . that [an officer] *might* have overreacted . . . is insufficient to show a constitutional violation." *Estate of Larsen*, 511 F.3d at 1263-64; *see also Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1238 (10th Cir. 2007) (stating "[m]ere speculation about [an officer's] motives could not prevail in summary judgment proceedings.") As the court stated in *Graham v. Connor*, 490 U.S. 386, 399 (1989) (quotation marks omitted),

-10-

"[t]he Fourth Amendment inquiry is one of objective reasonableness under the circumstances, and subjective concepts like malice and sadism have no proper place in that inquiry."

Finally, we conclude there is no merit to plaintiff's claim against the Board. There are many grounds on which this claim fails, but we address just one. "[O]ur conclusion [that Deputy Hair's conduct was not unconstitutional] precludes the imposition of any liability against [the Board]." *Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006).

The judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge